NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBIN PINES, et al., | Civil Action No.: 15-cv-204 |
| Plaintiffs, | |
| v. | OPINION |
| SARAH DAVIS, et al., | |
| Defendants. | |

**CECCHI, District Judge.**

**I. INTRODUCTION**

This matter comes before the Court on the motion for summary judgment filed in this matter by Defendants Sarah Davis and Lt. J. Jones ("Defendants"). ECF No. 92. After being provided a final opportunity to do so (*see* ECF No. 93), Plaintiff Ramoncito Ramos ("Plaintiff") filed a belated response to the motion. ECF No. 94. Plaintiff's response, however, did not include a statement of material facts in dispute, nor did it address in any substantive way Defendants' statement of material facts.[1] Defendants filed a reply with leave of the court. ECF No. 97. The Court having reviewed the motion and the record of this matter, and for the reasons set forth below, Defendants' motion shall be granted, and judgment shall be entered in favor of Defendants.

---

[1] Plaintiff's response, in total, is a letter asking the Court not to grant the motion, followed by a short document which contains generalized standards of legal authority. ECF No. 94 at 4-8. It is not clear if this document was drafted in response to this matter, or a different case involving a civilly committed individual. In any event, the submissions do not discuss the facts of Plaintiff's underlying case, nor do they directly respond to the actual arguments raised by Defendants in their motion.

## II.  BACKGROUND

Plaintiff has been civilly committed to the Special Treatment Unit ("STU") in Avenel, New Jersey, pursuant to New Jersey's Sexually Violent Predator Act (SVPA), N.J. Stat. Ann. § 30:4-27.24 et seq since 2010. ECF No. 92-1 at 1.  In January 2015, Plaintiff and another individual[2] filed a complaint raising claims against officials at the STU. ECF No. 1.  Following numerous addenda filed by Plaintiff and multiple screenings performed by Judge Linares, only two Defendants remain in this matter—moving Defendants Sarah Davis and Lt. J. Jones—against whom Plaintiff has two claims, a claim in which Plaintiff asserts he was denied prescribed sex offender treatment for non-medical reasons, and a conditions of confinement claim in which he asserts these Defendants were at least indifferent to deleterious conditions including a lack of heat and hot, clean water in the facility. *See* ECF Nos. 1, 7, 8, 11, 14, 26, 42.  Defendants filed a motion for summary judgment as to the remaining claims (ECF No. 92). As that motion is not opposed through a responsive statement of material facts,, this Court deems Defendants' statement of material facts (ECF No. 92-2) undisputed and admitted for the purposes of this opinion pursuant to Federal Rule of Civil Procedure 56(e)(2) and Local Civil Rule 56.1, and draws the following facts from that statement and the record. *See Ruth v. Sel. Ins. Co.*, No. 15-2616, 2017 WL 592146, at *2–3 (D.N.J. Feb. 14, 2017) (explaining where the non-moving party fails to file a responsive statement of disputed material facts, the Court is free to consider the moving party's statement of material facts undisputed and therefore admitted).

At the STU, civilly committed detainees are entitled to receive therapy and sex offender treatment from facility staff employed by New Jersey's Department of Human Services (DHS).

---

[2] This matter was originally brought by Plaintiff Ramoncito Ramos and Robin Pines. ECF No. 1. All of the claims raised by Mr. Pines were dismissed without prejudice by Judge Linares by way of an order issued on May 30, 2018. ECF No. 69.

ECF No. 92-2 at 2. Employees of New Jersey's Department of Corrections (DOC) also work in the facility, but they are tasked with maintaining security and order in the facility and do not provide treatment nor make treatment decisions. Id. at 2–4. When detainees fail to comply with or properly complete their therapy sessions, DHS staff will place them on treatment probation, and ultimately treatment refusal status. Id. at 2–3. Once placed on treatment refusal status, a detainee is no longer entitled to regular sex offender treatment until they convince DHS staff that they should be relieved from treatment refusal status. Id. Plaintiff was first placed on treatment refusal status in December 2012 but was placed back into treatment in March 2013. Id. In October 2014, Plaintiff was placed back on treatment refusal status, and remained on that status until early 2017. Id. at 3–5. Plaintiff was only in treatment for the purposes of his current complaint and entitled to sex offender treatment between March 2013 and October 2014. While Plaintiff wished that Defendants, both of whom are employed by the DOC and are not part of his treatment team, would have investigated his claim that he was unfairly placed on treatment refusal status, he acknowledged during his deposition that the DOC staff are in not involved in treatment refusal decisions beyond escorting detainees to the appropriate wing of the STU once they are placed on treatment refusal by DHS staff. Id.; *see also* ECF No. 92-4 at 11–16.

During the periods where he was receiving treatment, Plaintiff asserts that treatment sessions were temporarily cancelled during security or medical incidents and emergencies. ECF No. 92-4 at 19. At times, these cancellations were temporary, and detainees could return to treatment following the resolution of the emergency, but sometimes therapy would be cancelled for the day where the situation required it. Id. Plaintiff recalled treatment groups being temporarily cancelled due to security or medical emergencies relatively infrequently but could not recall a specific incidence in 2013 or 2014 when this occurred. Id. at 19–20. Plaintiff readily admitted that

these cancellations were normally the result of serious issues such as medical emergencies, inmate fights, and other security threats. Id.  Although Plaintiff recalled other incidents where treatment was restricted or cancelled due to staffing issues, he stated that these incidents occurred either before 2013 or in 2016–2017, well after the time period addressed in his complaint. Id. at 19–21.

Plaintiff also discussed in his deposition certain conditions at the STU that he believed violated his rights.  Plaintiff discussed a period of about "a month and a half" between late November 2014 and January 2015 during which the building in which he was housed did not have heat or hot water. Id. at 24–25.  During this time, both detainees and staff "suffered" from the lack of heat, with guards often wearing jackets and detainees being permitted to wear extra layers of clothing to ward off the cold. Id.  Because hot water was unavailable, Plaintiff went without showers for a few weeks, and instead washed himself using his sink. Id.  Plaintiff did not become ill from these issues but did have some discomfort in his hip and fingers. Id. at 25.  When detainees began to complain when the cold issues arose, the guards immediately put in a work order to have the maintenance staff fix the heating system. Id. at 24.  The facility also brought in a contractor on two occasions in November 2014, who temporarily fixed the system but did not permanently resolve the problem. ECF No. 92-7 at 50–54.  On or about December 29, 2014, Plaintiff and others filed grievances regarding the lack of heat and hot water and the facility brought the contractor back on January 9, 2015, at which point the issue was apparently resolved. Id. at 13-16, 54-56.

Plaintiff raised two other complaints regarding issues in the facility during 2013 and 2014. First, he claimed that "around [20]13 or [20]14," the STU's roof began to leak. ECF No. 92-4 at 28–29.  When Plaintiff raised this issue to the attention of Defendant Davis, she immediately put in a work order and had maintenance repair the issue. Id.  The problem apparently recurred, but the facility continued to repair the leak problem as it arose. Id.  Plaintiff also complained that the

plumbing system in his cell was connected to the surrounding cells, and that this resulted in him having to deal with occasional foul odors when others flushed their toilets. Id. at 29. No waste seeps into Plaintiff's cell, but the smell does arise from his toilet during these incidents. Id. Although Plaintiff complained about this, the issue was not fixed as it would require too much work and it would be too expensive to repair the entire plumbing system. Id. Plaintiff raised other complaints about the facility in his deposition, but these issues all concerned events occurring in or after 2016, well after the time frame of Plaintiff's complaint. Id. at 19, 26–27, 30–31.

### III.  DISCUSSION

#### A.  Legal Standard

Pursuant to Rule 56, a court should grant a motion for summary judgment where the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "identifying those portions of the pleadings depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A factual dispute is material "if it bears on an essential element of the plaintiff's claim," and is genuine if "a reasonable jury could find in favor of the non-moving party." *Blunt v. Lower Merion School Dist.*, 767 F.3d 247, 265 (3d Cir. 2014). A district court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion," *Id.*, but must not make credibility determinations or engage in any weighing of the evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, [however,] there is no genuine issue for trial." *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party has met this initial burden, the burden shifts to the non-moving party who must provide evidence sufficient to establish that a reasonable jury could find in the non-moving party's favor to warrant the denial of a summary judgment motion. *Lawrence v. Nat'l Westminster Bank New Jersey*, 98 F.3d 61, 65 (3d Cir. 1996); *Serodio v. Rutgers*, 27 F. Supp. 3d 546, 550 (D.N.J. 2014). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial. However, the party opposing the motion for summary judgment cannot rest on mere allegations, instead it must present actual evidence that creates a genuine issue as to a material fact for trial." *Serodio*, 27 F. Supp. 3d at 550.

Pursuant to Federal Rule of Civil Procedure 56(e)(2) and Local Civil Rule 56.1, where, as here, the moving party files a proper statement of material facts and the non-moving party fails to file a responsive statement of disputed material facts, this Court is free to consider the moving party's statement of material facts undisputed and therefore admitted for the purposes of resolving the motion for summary judgment. *See, e.g.*, *Ruth*, 2017 WL at *2–3. Even where the defendants' statement of material facts is deemed admitted and unopposed, a district court is still required to "satisfy itself that summary judgment is proper because there are no genuine disputes of material fact and that [Defendants are] entitled to judgment as a matter of law" in order to grant summary judgment. *Id.* at 2 (citing *Anchorage Assocs. v. Virgin Islands Bd. Of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990)).

**B. Analysis**

**1. The Applicable Time Frame for this Matter**

During his deposition, Plaintiff testified regarding complaints he had about his time at the STU which occurred both before and after the filing of the complaint and addenda in this matter. A plaintiff, whether *pro se* or represented, may not "effectively . . . amend a complaint through

any document short of an amended pleading," *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 109 n. 9 (3d Cir. 2002), and he may therefore not raise via his deposition claims which post-date the time frame of his complaints unless he formally amends or supplements his complaint to include those claims. *See, e.g.*, *Aruanno v. Corzine*, 687 F. App'x 226, 229 n. 5 (3d Cir. 2017). Because Plaintiff's last addendum was filed on April 15, 2015 (*see* ECF No. 7), and because Plaintiff raises only § 1983 claims which are subject to a two-year statute of limitations in New Jersey, the time frame for this matter is limited to the date two years before the filing of the complaint in this matter, i.e. January 3, 2013. *See* ECF No. 1-5 at 23 (noting that the complaint was submitted on January 3, 2015). Any claims arising from events which wholly precede January 3, 2013, would be time barred. Any claim arising after the last addendum in this matter filed by Plaintiff on April 15, 2015, including Plaintiff's assertion of various issues at the facility occurring in 2016 and 2017, would be beyond the scope of this matter. In deciding this motion, this Court shall therefore only consider Plaintiff's testimony of events which occurred prior to April 15, 2015, in evaluating Defendants' motion. Plaintiff's assertion of violations of his rights occurring after April 15, 2015, shall not be considered. *Aruanno*, 687 F. App'x at 229 n. 5.

**2. Plaintiff's Treatment Claim**

Plaintiff asserts that Defendants violated his rights by reducing or barring his sex-offender treatment for non-medical reasons by cancelling treatment sessions during security or medical emergencies. Defendants argue that Plaintiff cannot establish their personal involvement in the reduction of treatment, that they did not cause a sufficient reduction or change in treatment in any event, and that they are entitled to qualified immunity as to this claim. Plaintiff's

> denial of medical treatment claims . . . essentially attempt[] to track the claim presented in *Thomas* [*v. Adams*, 55 F. Supp. 3d 552, 575-78 (D.N.J. 2014)]. In *Thomas*, Judge Debevoise observed that the Supreme Court has held that mentally challenged individuals who

> have been confined on the basis of their mental issues have a constitutional right to receive treatment, and that the Third Circuit has since held that this same reasoning entitles certain sex offenders whose terms of incarceration are dependent upon the completion of treatment to such treatment under the Due Process Clause. *Id.* (citing *Youngberg v. Romeo*, 457 U.S. 307, 316-22 (1982); *Leamer v. Fauver*, 288 F.3d 532, 545-47 (3d Cir 2002)). Because a civilly committed S.V.P.'s release from the STU is largely contingent upon his response to treatment, Judge Debevoise in turn held that they, too, were entitled to treatment under the Constitution, and therefore the denial of that treatment for non-medical reasons was sufficient to support a § 1983 claim. *Id.* *Thomas* therefore stands for the proposition that where an S.V.P. Plaintiff seeks to apply this theory of liability to a supervisor, the plaintiff must show the following to state a claim for relief: (1) that the defendant supervising officials make system-wide determinations, (2) those determinations are the moving force behind the circumstances "under which the subordinate officers effectively have no choice but to deny/reduce/change an [S.V.P.'s] prescribed medical/mental treatment for non-medical reasons," (3) such denial or change of treatment was foreseeable under the determinations made by the supervising defendants, and (4) there is a causal link between the supervisor defendant's decisions and the injury to the plaintiff. *Id.* at 577-80; *see also Brown v. Plata*, --- U.S. ---, 131 S. Ct. 1910, 1928-29 (2011); *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 310, 316-20 (3d Cir. 2014); *Leamer*, 288 F.3d at 545-47; *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993); *White v. Napolean*, 897 F.2d 103, 113 (3d Cir. 1990).
>
> As the Third Circuit explained in affirming *Thomas*, the key question in establishing such a claim is whether the plaintiffs can adequately assert that "each officials *own* decisions and acts causally connected [the defendants] to [a substantial] reduction or elimination of the prescribed treatment." *Thomas v. Christie*, 655 F. App'x 82, 85-86 (3d Cir. 2016).

ECF No. 58 at 3–4 (internal record citations omitted).

Underlying the claim recognized in *Thomas*, is the concept that those committed under the SVPA are, at the time of the alleged reduction in treatment, entitled to sex offender treatment, and that the actions of the Defendants substantially reduced or prevented that treatment. While it is

clear that those committed as SVPs are generally entitled to sex offender treatment, Plaintiff admitted during his deposition that during the periods between December 2012 and March 2013, and between October 2014 and March 2017, he was placed by treatment staff on Treatment Refusal Status, and that while on Treatment Refusal, he was not scheduled to receive sex offender treatment. Plaintiff further admitted that the decision to place him on that status was not made by Defendants, but was instead entirely left to the discretion of treatment staff who are part of an entirely separate state entity—DHS rather than DOC—and over whom Defendants had no control. As Plaintiff's treatment team placed him on Treatment Refusal for all of the relevant time frame except the period between March 2013 and October 2014, and because Defendants had no say in Plaintiff's placement on Treatment Refusal, they obviously could not have impacted, reduced, or otherwise substantially changed his sex offender treatment outside of this period.

Plaintiff's *Thomas* claim could only succeed if he provided sufficient proof to permit a reasonable juror to find that Defendants substantially reduced his sex offender treatment during the period between March 2013 and October 2014. Plaintiff could not recall being denied or prevented from receiving sex offender related treatment during this period. ECF No. 92-4 at 14. Although Plaintiff testified at his deposition that the DOC security staff, including Defendants, occasionally halted group therapy while the facility was on lockdown related to security or medical issues – such as when other detainees engaged in fighting or were otherwise injured or ill – Plaintiff identified no specific instances during the relevant time period. Even to the extent that treatment was interrupted for security reasons, Plaintiff stated that these interruptions of treatment were not frequent and occurred only "every once in a while." Id. at 19–20. Plaintiff further agreed that these interruptions were usually the result of serious medical or security issues. Id. Plaintiff's own testimony indicates that any interruptions in treatment were infrequent and were normally the

result of actual security or medical issues, that the interruptions were temporary, and sometimes did not even result in the cancellation of treatment for the day. Given Plaintiff's deposition and lack of supporting evidence in the record, Plaintiff has not provided testimony or other evidence sufficient to show that his treatment was substantially reduced or changed. A reasonable factfinder could not find in Plaintiff's favor, and Defendants are entitled to summary judgment.

Even were this not the case, Defendants would clearly be entitled to qualified immunity based upon the record before the Court. "The doctrine of qualified immunity shields government officials who perform discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 637 (3d Cir. 2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, (2011)).

Entitlement to qualified immunity is evaluated through a two-pronged analysis. "First a court must decide 'whether the facts that a plaintiff has . . . shown make out a violation of a constitutional right'[, a]nd second, the Court must determine 'whether the right at issue was clearly established at the time of [the] defendants alleged misconduct.'" *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). A right is clearly established where there is either Supreme Court precedent, which is directly on point, or where "existing precedent [has] placed the statutory or constitutional question *beyond debate*." *Spady*, 800 F.3d at 639 (quoting *al-Kidd*, 131 S. Ct. at 2083). Although neither the Third Circuit nor the Supreme Court have definitively held as much, the Third Circuit has also suggested that a right may be clearly established where there is a "robust consensus of cases of persuasive authority in the Court[s] of Appeals" sufficient to place

reasonable officials on notice. *Id.*; *see also Kedra v. Schroeter*, 876 F.3d 424, 450–51 (3d Cir. 2017). Ultimately, at summary judgment the "question is whether a reasonable public official would know that his or her *specific conduct* violated clearly established rights . . . . Thus, crucial to the resolution of any assertion of qualified immunity is a careful examination of the record . . . to establish, for purposes of summary judgment, a detailed factual description of the actions of each individual defendant." *Thomas v. Christie*, 655 F. App'x 82, 84 n. 3 (3d Cir. 2016) (quoting *Rouse v. Plantier*, 182 F. 3d 192, 200 (3d Cir. 1999)).

Here, Plaintiff essentially seeks to hold Defendants accountable for incidental and infrequent reductions or interruptions of treatment which occurred due to actual security or medical concerns at the STU, a claim quite different than that discussed by the Third Circuit in *Thomas*. *See, e.g.*, *Zalazar v. Stem*, No. 16-7092, 2019 WL 1950386, at *5–6 (D.N.J. May 2, 2019). As Plaintiff has identified no case that clearly establishes a right requiring civilly committed individuals to receive treatment without interruption regardless of the legitimate security or medical issues of the facility in which he is confined, Plaintiff has not, and cannot, show that the right he seeks to vitiate has been clearly established. Likewise, because it would not be clear to a reasonable official that the conduct in question here—infrequently interrupting treatment based on legitimate security or medical issues—violated the rights of Plaintiff, Defendants are clearly entitled to qualified immunity on Plaintiff's *Thomas*-related claim. Therefore, Defendants are entitled to summary judgment.

**3. Plaintiff's Conditions of Confinement Claim**

Plaintiff asserts that the conditions he was housed in violated his constitutional rights. As Plaintiff was a civilly committed individual, rather than a convicted prisoner his claim arises out of the Fourteenth Amendment's Due Process Clause. *See, e.g.*, *Hubbard v. Taylor*, 399 F.3d 150,

164–65 (3d Cir. 2005). Under the Fourteenth Amendment, "the proper inquiry is whether [the] conditions amount to punishment prior to an adjudication of guilt in accordance with due process of law." *Id.* at 158 (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). While convicted prisoners may be subjected to those restrictions which are rationally related to their criminal confinement, there "remains a distinction between punitive measures that may not be constitutionally imposed [absent] a determination of [criminal] guilt and regulatory restraints that may." *Id.* Courts faced with such claims must therefore decide whether the restraint is imposed "for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of the . . . facility officials, that determination will turn on whether [the restraint] has an alternative purpose . . . and whether it appears excessive in relation" to that purpose. *Id.* (quoting *Bell*, 441 U.S. at 538–39). The conditions of confinement of a civil committee will therefore violate a detainee's rights where the conditions "cause [detainees] to endure [such] genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purpose assigned to them" in light of the totality of the circumstances in effect at the time. *Id.* at 159–60. The court must consider whether the conditions resulted in any injury, disease, or gross unsanitary circumstance in determining whether the imposed conditions are unduly harsh in light of the legitimate government interests involved. *See Hubbard v. Taylor*, 538 F.3d 229, 235 (3d Cir. 2008).

Even where a plaintiff establishes that conditions of confinement are objectively severe enough to amount to a deprivation of rights, the plaintiff must still show that the defendants acted with a sufficiently culpable state of mind to recover. *See Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). A plaintiff must provide evidence which could lead a reasonable juror to conclude that the defendant caused the suspect conditions with the intention to punish, or show that the imposed

conditions are either not rationally related to a legitimate purpose or are excessive in relation to that purpose, in which case a court may infer that the conditions were imposed as an improper punishment. *Id.* at 67–68. Where the facts instead establish that the defendants were acting in a manner rationally related to legitimate interests any inference of punitive intent is dispelled. *Hubbard*, 399 F.3d at 159; *see also Bell*, 441 U.S. at 538–40.

Plaintiff's grievance was that for about a month and a half between late November 2014 and early January 2015, the South Unit where he was housed did not have proper heating and hot water. ECF No. 92-4 at 24–25. Plaintiff asserts that he could not shower due to the cold water for about "two or maybe three weeks," but that he was able to wash himself at his sink during this time and was able to wear multiple layers of clothes to combat the cold. Id. at 25. The officers also suffered with the cold but were able to wear coats – which Plaintiff did not have. Id. Plaintiff was left uncomfortable during this period but did not suffer rashes, boils, or anything other than minor aches and pains as a result of the cold. Id. Both Plaintiff's complaint, and various grievance records indicate that many detainees began to complain about this issue on or around December 29, 2014. ECF No. 96-6 at 34–44. When Plaintiff complained prior to that point, he testified that the officers put in a work order. ECF No. 92-4 at 24. Records further indicate that the facility made multiple attempts to fix the issue, including by hiring an outside contractor who worked on the issue on multiple occasions in late November 2014 and on January 9, 2015. ECF No. 92-7 at 53–56. Plaintiff provided no testimony, directly tying either of the two named Defendants to this issue but did testify that when he brought other issues to Defendants' attention, they immediately issued a work order to have maintenance address the issue. ECF No. 92-4 at 29.

It is clear that the lack of heat and hot water was not an intentionally imposed punitive condition: repair records clearly show that there was a breakdown of the relevant heating

equipment, and Plaintiff neither testified nor alleged that the lack of heat or hot water was intentionally imposed. Likewise, the facility made repeated attempts to repair the issues both through in-house work orders and through the hiring of outside contractors on multiple occasions between November 2014 and January 2015. The fact that Plaintiff and others were permitted to wear extra layers of clothing and otherwise alleviate the conditions as best they could, rebuts any presumption that the facility imposed the lack of heat and hot water as a form of improper punishment. Thus, even though the conditions Plaintiff was exposed to were more than sufficiently severe to raise constitutional concerns, Plaintiff has failed to present evidence which would permit a reasonable juror to find that the two Defendants named here acted with a sufficiently culpable state of mind in relation to those conditions. Therefore, Defendants are entitled to summary judgment as to Plaintiff's heat and hot water related conditions of confinement claim.

Plaintiff also raises two additional conditions of confinement claims: that throughout his time in the STU the plumbing system between cells has been set up in such a way that he is sometimes exposed to unpleasant odors when adjacently celled detainees flush their toilet, an issue Plaintiff testified was the result of the way the plumbing system in the facility is set up, and that, between late 2013 and early 2014, the facility was subject to water leaks during heavy rain. As to the former, it is clear that occasionally being exposed to foul smells because of the plumbing system is not sufficiently severe to support a conditions of confinement claim. As to the latter, Plaintiff once again fails to present evidence of a sufficiently culpable state of mind. Plaintiff connects only Defendant Davis to that claim and in so doing explicitly states that as soon as he told her of the issue, she immediately sent maintenance to fix the issue. ECF No. 92-4 at 28–29. Plaintiff has failed to show the plumbing issue is sufficiently severe, and has failed to provide any

evidence to support a culpable state of mind as to the leak issue. Instead, Plaintiff provides testimony that Defendant Davis immediately sought to remedy the problem upon learning of it. Accordingly, Defendants are entitled to summary judgment as to these claims as well. As Defendants are entitled to summary judgment as to all of Plaintiff's claims which are within the scope of the complaint in this matter, Defendants' motion shall be granted and judgment entered in their favor.

### IV. CONCLUSION

For the reasons stated above, this Court GRANTS Defendants' motion for summary judgment (ECF No. 92). An appropriate Order accompanies this Opinion.

**DATED:** July 28, 2020

_____
**CLAIRE C. CECCHI, U.S.D.J.**